May it please the court, I'm Steve Younker. I represent the applicant and appellant, Janet Ulloa-Martinez. This case originally went up on appeal on the issue of whether or not a family was a protected social group and I think that issue has been pretty much laid to rest, that this circuit had the right approach in the beginning and that was appealed or at least allowed and recognized by the BIA. We do have a finding of past persecution in this case, a specific finding. There's no issue of the credibility of the appellant at all. Is there any evidence of past persecution on account of a protected ground? Well, Your Honor, that ultimately was the issue that the court, the immigration judge, did not reach. Is there any evidence that the government was either fostering that persecution or willing to look the other way on that? Well, I assume that's the issue of primary concern to the court and that's the one I wanted to spend the time on, Your Honor. The IJ found that there was past persecution. That was a very explicit finding and he considered the actual rape to be the primary example of that, which of course was the most atrocious violence visited on the appellant. But he went on to say that there was not a finding that that past persecution or he did not make the finding that that was due to a protected ground and that's where he listed repeatedly on pages that I cited to the court in his oral opinion that he made factual findings that Ms. Ulloa wound up in the line of fire because she was a family member and her family was in a business opposition to a local potentate and thug named Sevilla. But he didn't actually close the deal, Your Honor, and say that with all these examples of persecution due to her being a family member that the persecution was on account of her being a family member. He didn't actually make that determination. Didn't she herself testify to that? She did indeed, Your Honor. She said that she was persecuted because of her family, that initially there was an economic dispute, the two competing restaurants, but the thug came after her in particular as well as other family members with threats and violence and she suffered the brunt of it and fled to this country. Is that enough for your purposes? Well, I agree that family is a social group. That amounts to saying she's being persecuted because she's a member of a given social group. Exactly, Your Honor. And so I thought that in doing my placement in the calendar, I figured, well, the issue in this case has got to be the government inability or unwillingness. You give more credit to the logic of our calendar, but you're probably not off the mark. Well, I can't argue the issues any better than prior counsel did, Your Honor. But I think our facts are a little different and maybe better. We have a protected social group of a family. It doesn't have quite the same issues arising out of it as would the gay and lesbian community. But on the other hand, we actually have a family who did go to the police. Now, I concede that out of five incidents of violence visited on them, they only went twice. For the very first incident, the machete against the door incident, they reported that to police, and Mr. Sevilla got off after paying some money. But the important point, I think, we see a lot of these kinds of cases is the police actually did respond, and they arrested Mr. Sevilla, right? Well, that is the record, Your Honor. And it appears that he got released after paying some money, and the record is not clear, and it was beyond my client's ability to reconstruct whether that was a bail, a bribe, a fine, or what it was. But he went free. Now, I concede to you, Your Honor, the police took him into custody. But of the incidents of violence after that, none were reported to the police until the rape. That was reported late after the applicant had left the country and was in the United States, and the record we have is that that prosecution was not followed up on or that investigation was not followed up on because they didn't have a complaining witness handy. Yeah, I just wondered how police in the United States would have responded if they had gotten this kind of a report on a rape of somebody who had left the country. You know, I don't know, Your Honor, but I do know that in the country conditions report on the page and section relating to women, it does say that rapes are considered public crimes, so a rapist can be prosecuted even if the victim does not want to press charges. And it does seem that if the... What do you use for evidence? I mean, I think the practical problem and the reason that Judge Bybee suggests that police in this country wouldn't react any differently is that if you're going to prosecute, you need to prove your case that a complaining witness is no place to be found and is not likely to be back. What are you supposed to do? Well, I think, Your Honor, if we were talking about, you know, a rape that occurred in New York City and there's no prior history and we're questioning a population of a couple million people, that's true. But the town that this gal comes from has got 7,800 people in it, Your Honor. There's no way that she... She hasn't even identified a name. It's pretty clear who it's not. That is, she did not identify at any time as Mr. Sevilla. That's true, Your Honor. So at best, we've got her thought that maybe this is somebody that Sevilla has put up to it, but we don't even know that and we haven't got any... There's no name at all. I mean, what were the police supposed to do? Well, you know, again, Your Honor, and obviously I have a tremendous emotional commitment to the client, it does seem to me, though, that just intellectually in trying to be detached, knowing that this is a tiny town and this feud, well known to the police, already reported to them at least once, was it too hard to make the connection to call Mr. Sevilla in and ask him about it? I mean, they could have inquired as to his whereabouts, you know, whether or not he'd hired anybody recently, a recent withdrawal from the bank. I mean, it's possible it could have been looked into. It's not even clear if they knew the day or the time or the location because all of this was now hearsay. It did not have a complaining witness. All they had was what she had told somebody before she left who then went to her mother. That's true, Your Honor. That is true. But they did have the prior report and they had this incident. They had an ongoing feud in a tiny town. I respectfully submit that the police could have put two and two together and whether they could have proven beyond a reasonable doubt... Wound up with what? Because they wouldn't have wound up with a case they could prove. They still don't have a witness. Even if they could figure out that this woman might have been assaulted, let's assume for a moment they don't have to reach and try to prove rape. They could just settle for proving assault. They still don't have any evidence to do that. Well, I guess, Your Honor, my response is this. We don't have enough evidence to say that they could have put together a lead pipe since criminal prosecution. I grant you that. We don't have enough evidence to think they could have made probable cause on anybody or whatever the local version of that would have been. Well, and I freely confess, Your Honor, I don't know enough about criminal procedure in this country, much less Honduras. But we do have the prior example, Your Honor, of an actual report to the police. The complaining witness is on the spot, and Mr. Sevilla goes free after some money changes hands. And I would also respectfully submit we have the post-departure incident of violence reported by the sister, backed up by my client and accepted by the IJ in terms of credibility, and that is where Mr. Sevilla was actually accused of a murder and went scot-free. I mean, it's long ago and far away, Your Honor. It is a tiny town. I grant you that I can't reconstruct how Mr. Sevilla could have been convicted of this, but it does seem common sense would lead us to the conclusion that given the sequence of events, there's certainly a regional probability that he was involved in that rape and that the police have made no effort or questioning or anything of any sort to follow up on it. If she's returned to Honduras, any evidence that her mother continues to be persecuted by Mr. Sevilla in their town? We do, Your Honor. We have the respondent's own testimony, which is hearsay, but we also have the declaration of the sister, which is part of the record, in which she talks about that there are continuing threats. Any evidence that if Ms. Ulloa Martinez were to return to Honduras and return someplace else, perhaps the capital, which is a much, much larger city, that she would suffer persecution there? Well, I think, Your Honor, given that we have the finding of past persecution, I'm not sure how the burden might have shifted on that issue to the government, and the government offered no evidence on it. But trying to be responsive, we don't have any evidence that if she went elsewhere in the country, she would not be subject to violence other than the fact that this potentate seems like a determined sort, and the country conditions do involve widespread violence against women. In terms of returning to her hometown, Your Honor, we do have the declaration of the sister, and I commend that to the court. Would the page numbers be helpful to the court? Sure. Your Honor, it is unfortunately not in order, but the actual pages are located from 203 through 208. If it pleases the court, I would like to preserve whatever time I've got for rebuttal. You may. And now we'll hear from counsel for the Attorney General. Good morning, Your Honors. My name is Corey Farrell, and I'm here today on behalf of the Attorney General. While it is true that Petitioner in this case suffered an inexcusable crime, the agency reasonably found that she did not satisfy two out of the three requirements for establishing eligibility for asylum. First, the agency found that she didn't establish a nexus between the harm she suffered and a protected ground, and the agency additionally found that she did not establish that the harm she suffered was caused by the government or persons the government was unable or unwilling to control. Therefore, substantial evidence does not compel reversal of the agency's decision. As to the unable and unwilling prong, as this court has noted, Petitioner's family went to the police after the first incident involving Mr. Sevilla, and the police actually took a report and arrested Mr. Sevilla. While it is true that he was released, the record shows that he did pay some money, and it's not clear if it was a fine. The immigration judge described it as a bond. So the police were willing to take some action. None of the other incidents directly involving Mr. Sevilla were reported to the police, and Petitioner's rape was not reported to the police until after she left Honduras, and it was reported by her mother, who only learned of the rape through a friend of Petitioner's. And the police report is in the record. The report explains that the police could not continue their investigation because they did not have the identity of the perpetrators, the victim's testimony, and they needed a forensic medical examination. And so this shows that the police gave a rational reason for not continuing the investigation. Additionally, there is evidence in the country reports that rapes are prosecuted in Honduras, that it says about 100 out of 275 rape cases that were reported. I don't know that the claim is that the country or any authorities in the country refuse to prosecute crimes of rape. We hear that in some cases, but this one seems to be more pointed, that the source of the violence and of the risk is someone who is of such stature or connections that he's not going to be reached. And the country report may say that they prosecute some number of rapes, but that doesn't necessarily speak to the threat that's posed in this case. That's true, Your Honor. And the evidence specific to this case, namely the police report taken after Petitioner's mother reported the rape, explains why the police could not continue their investigation. And so that's the evidence specific to Petitioner that shows that the government was willing to protect her in this situation. Does the Court have any further questions? I noted that you talked about the third prong, not so much the second. Okay. I take it that's not an accident. And the reason I say that is that case law evolves, so this isn't meant to be a criticism of a decision made by the IJ at the time. But, in fact, if a family is recognized as a social group, the source of the antagonism toward the Petitioner wasn't economic, it wasn't the Petitioner's restaurant, it was her mother's restaurant. And so it seems to me that she would fit comfortably within the notion of someone who was targeted because of the social group membership, i.e., the relationship with her mother. That is correct. The case law has evolved, and family is a social group. In this case, though, there is one thing to note, that there is no evidence tying Mr. Sevilla to the rape of Petitioner. She testified that she was targeted by unknown men, and they didn't rape her at her home or near the restaurant. They didn't mention anything about her family or about Mr. Sevilla. So there really is no evidence that her rape was related in any way to her family. No evidence beyond her own suspicion or inference. That's correct. She believed that Mr. Sevilla was involved because of the past threats, but nothing surrounding the incident points to Mr. Sevilla being involved. And she's also claiming that her family, and specifically her mother's restaurant, was the cause of all this harm, but she also testified that her mother closed the restaurant before she left Honduras, and her mother and sisters continue to live in this small town in Honduras. And while there is evidence that there have been threats against the family, there's no evidence that they have been physically harmed. Any further questions? Apparently not. We thank you for the argument. Thank you, Your Honor. And invite Mr. Yunker to return for rebuttal. Thank you, Your Honor. I think I'd just touch on the last point first for the court, the idea that she could potentially return safely. I think that where we have a finding of past persecution, I don't think that that's the proper standard. I don't think that the government can argue, look, she probably would be safe or she might be safe, or not to worry when there's no substantial evidence actually in the record to that effect. Indeed, the evidence in the record. I thought she just cited evidence. That is that the restaurant closed, I recall seeing that, and that the mother and sister remain there. Remember the sister's declaration, she remains there. That's true, Your Honor. There's no description of continuing violence. So how is that not supported by evidence? Where I was going was to say, Your Honor, that if you actually read the declaration, that was I think an unreasonable example of cherry picking. That declaration says there's considerable menace still ongoing, and the restaurant has been closed, but there are continuing threats. And the youngest daughter, hopefully below the age where she'd be attacked, and the mother beyond it have stayed there so they don't lose their home. I think if you read the declaration, Your Honor, and frankly, I hadn't read it in a couple years myself until 15 minutes ago, it reminded me of that evidence put before the court, the trial judge, I mean, of course. On the unable and unwilling, Your Honor, I guess I would, I mean, the evidence is limited. I would offer this. You know, how many times do you have to go to the police, not get a result that results in safety or even a reduction in violence? In fact, there's repeated instances of the family being under attack by Sevilla after the initial report to the police, even if we exclude the rape. Isn't that enough? I mean, you think of the examples of children being molested or spousal abuse, of course, is the classic, where social workers and the police and everybody else are involved, restraining orders, but somebody gets off, gets another bite at the apple, and a person is murdered. I think, Your Honor, here at least we do have the example of going to the police. Whatever transpired when that money changed hands, Mr. Sevilla was not deterred. The violence level went up. And I would respectfully submit that that should achieve the standard, that should be sufficient for the standard, maybe not in every case, maybe not as a matter of law, but under the circumstances of this case, to show government inaction sufficient for political asylum in this country. Thank you. We thank both counsel for your assistance in this case. Thank you, Your Honor. The case just argued is submitted. The next case listed on today's calendar is already submitted on the briefs. That's United States v. LeBlanc. So we will move to the next case on the list, Sinotrans Container Lines v. North China Cargo Service.
judges: Korman, Clifton, Bybee